WILFRID OLSSON, PLAINTIFF-RESPONDENT, v. NEWARK LADDER & BRACKET SALES CO., INC., A CORPORATION, DEFENDANT-APPELLANT, AND R. H. M. CORP., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Argued May 20, 1969—Decided June 5, 1969.

*Mr. Herbert C. Klein* argued the cause for appellant (*Messrs. Krieger & Klein,* attorneys).

*Mr. Andrew V. Clark* argued the cause for respondent (*Messrs. Seaman and Clark,* attorneys).

The opinion of the court was delivered

PER CURIAM. Plaintiff sued defendant Newark Ladder & Bracket Sales Co., Inc., a ladder manufacturer, to recover damages for injuries suffered by him when an extension ladder, allegedly manufactured by defendant, telescoped while he was using it in the course of his employment and caused him to fall to the ground. (A third party complaint was dismissed at the close of the proof and is not involved here.) A jury verdict for the plaintiff was sustained in the Appellate Division. We granted defendant's petition for certification. 53 *N. J.* 346 (1969).

During the course of pretrial discovery, defendant propounded interrogatories requesting copies of any photographs

in plaintiff's possession of the ladder involved in the accident. Plaintiff answered under oath that copies had been furnished to defendant's attorney by his attorney. It is undisputed that they were furnished. Upon receipt and study of the photographs defendant became satisfied that the ladder shown was not of its manufacture. It then marshalled its evidence to show that fact at the trial; quite obviously such evidence was the principal focus of its defense.

According to plaintiff's trial attorney, he interviewed one of the eyewitnesses to the accident for the first time on the morning of the trial. In this conversation the witness said the ladder shown in the photographs was not the ladder being used by plaintiff at the time of his fall. Specifically he said the ladder involved had two metal clips which supported the upper part thereof when it was extended. At the time of the collapse or telescoping of this upper part, one of the metal clips pulled completely out of the side of the ladder and fell to the ground. The clip on the other side was bent immediately after the mishap. The clips on the ladder shown in the photographs were intact and in place.

Obviously the change in the plaintiff's evidence was going to have a dramatic impact on the defendant's case. With other proof to be introduced to show that the *actual* ladder was purchased from defendant, introduction of the facts respecting the condition of the clips would have seriously undercut the planned defense. In this situation, in all fairness, defense counsel should have been alerted immediately to the mistake that had been made by plaintiff in asserting earlier that the ladder depicted in the photographs was the one involved. Defendant would then have had an opportunity to seek an adjournment of the trial in order to prepare for the revised case against it. If the information had been given, and a postponement sought, it is unlikely that the request would have been denied.

Nothing was said, however, and the trial proceeded. When the witness mentioned above took the stand and was handed the photographs, he denied they showed the ladder in ques-

tion. In explanation he referred to the missing clip on one side and the bent clip on the other side of the alleged actual ladder. Defense counsel objected on the basis of the photographs supplied by way of the interrogatories; he also pleaded surprise. At the outset of the considerable discussion which followed the plaintiff's attorney clearly indicated that if the defense was genuinely surprised, he would not oppose a mistrial. At first defendant's position seemed to be that the court should limit the proof to the interrogatory photographs and exclude the evidence relating to a different ladder. When the court declined to rule that way, defendant moved for a mistrial, which was denied. At this point the court indicated that the interrogatories and answers could be used to impeach or contradict plaintiff's testimony but not to limit the proof. Regardless of the legal propriety of that view (which we need not deal with here) we think that fundamental fairness required favorable action on the motion for mistrial. The position first taken by plaintiff's counsel represented the just solution. He said: "I can only ask that your Honor grant a mistrial. Give counsel whatever time he deems necessary to investigate this phase of the case and then try the case on the merits." Defendant's unsuccessful effort to persuade the court that the new proof should be excluded entirely should not have resulted in rejection of his motion for mistrial.

A trial is a search for the truth. That objective became seriously clouded when the conflict appeared between the answers to the interrogatories and the evidence revealed to plaintiff's attorney on the morning of the trial. The curative measure was immediate notice to defense counsel. In our judgment the failure to do so and the development of the new stance of the plaintiff's case during the trial made the granting of a mistrial the only fair course for the trial court to take.

Under the circumstances the judgments of the Appellate Division and the trial court are reversed, and the cause is remanded for retrial.

138

*For reversal and remandment* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN. — 7.

*For affirmance* — None.